IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**QURDELL WASHINGTON,**
**ADC #161204**                                                                                      **PLAINTIFF**

**V.**                              **CASE NO. 2:20-CV-181-KGB-BD**

**JEFFREY DEEN,** *et al*.                                                                       **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.      Procedure for Filing Objections**

This Recommendation for dismissal has been sent to Judge Kristine G. Baker. Any party who disagrees with the findings or conclusions set out in the Recommendation may file objections. To be considered, objections must be received in the office of the Court Clerk within 14 days. Objections should be specific and should include the factual or legal basis for the objection.

If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. If the parties do not file objections, they may waive any right to appeal questions of fact.

**II.     Background**

Plaintiff Qurdell Washington, an inmate at the East Arkansas Regional Unit (EARU) of the Arkansas Division of Correction (ADC), filed this civil rights lawsuit without the help of a lawyer. (Doc. No. 2) Mr. Washington complains that Defendants were deliberately indifferent to his safety by failing to take appropriate actions to control the spread of COVID-19 at the EARU and, specifically, by requiring him to report to

work on the hoe squad after the President and Governor had declared a state of emergency due to COVID-19.[1] (Doc. No. 2) He seeks ten million dollars in damages. (Doc. No. 2, p.5)

Defendants Deen, Lay, Randle, Keith Waddle, and Dexter Payne have moved to dismiss all claims against them.[2] (Doc. No. 12) Mr. Washington has not responded to the motion to dismiss.

### III.   Analysis

   A.  Factual Allegations in Mr. Washington's Complaint

According to the allegations in the complaint, from the outset of the COVID-19 pandemic, Defendant Randle instructed officers under his supervision to operate the prison as if COVID-19 did not exist. As a result, Mr. Washington alleges, ADC officials failed to take adequate measures to protect him from COVID-19 infection. (Doc. No. 2, p.7) Mr. Washington alleges that unnamed EARU officers failed to wear gloves and failed to provide inmates with adequate cleaning supplies. (Doc. No. 2, pp.7-8)

According to the complaint, on April 27, 2020, Mr. Washington refused to report to work on the hoe squad.[3] (Doc. No. 2, p.7) He was issued a major disciplinary for

---

[1] There is a pending recommendation to dismiss claims against the Arkansas Department of Correction. (Doc. No. 5)

[2] The Clerk of the Court is instructed to update the names of Defendant Deen to Jeffrey Deen; Defendant Lay to Gaylon Lay; and Defendant Randall to Kenyon Randle.

[3] Mr. Washington included a disciplinary appeal for another inmate who refused to report to work on April 27, 2020, but he did not include his own disciplinary appeal. (Doc. No. 2, pp.39-40)

refusing to work, and Defendant Deen signed off on the disciplinary. (Doc. No. 2, p.7) Mr. Washington states that he informed Defendants Waddle, Lay, Deen, and Payne that he did not report to work because he feared that he might contract COVID-19. (Doc. No. 2, p.7) Nonetheless, Defendant Waddle found Mr. Washington guilty of an unexcused absence from work; and Defendant Payne affirmed the disciplinary. (Doc. No. 2, p. 7) As a result of his disciplinary conviction, Mr. Washington's phone, commissary, and video visit privileges were suspended.[4] (Doc. No. 2, p.7)

Subsequently, on an unspecified date, Mr. Washington tested positive for COVID-19. (Doc. No. 2, p.8) While in quarantine, he was allegedly forced to report to work. (Doc. No. 2, p.8)

B. Standard

In deciding whether Mr. Washington has alleged facts that state a claim for relief, the Court must assume that the allegations in the complaint are true, then determine whether those allegations, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A complaint cannot simply "[leave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Id.* at 561 (citation omitted). Rather, the facts set forth in the complaint must "nudge [the] claims across the line from conceivable to plausible." *Id.* at 570.

---

[4] To the extent Mr. Washington claims a due process violation, that claim fails as a matter of law. The loss of various privileges is not significant enough to trigger due process protection.

C.   Deliberate-Indifference Standard

To proceed with deliberate indifference claims, Mr. Washington must allege facts showing that he faced an objectively serious threat to his health and that these Defendants knew of the threat, but demonstrated a lack of care, "equal to criminal recklessness." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011). Even if the Defendants knew that COVID-19 posed a substantial risk to inmates' safety, they cannot be held liable, "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

D.   Personal Liability

In a civil rights case such as this, the plaintiff must allege, "a causal link to, and direct responsibility for, the deprivation of rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (internal quotation marks and citation omitted). To proceed with his claims, Mr. Washington must specifically state how each Defendant violated his rights. "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Supervisors are not liable for the constitutional violations their subordinates commit, unless the supervisors had some personal involvement. *Ashcroft v. Iqbal*, 556 U.S. at 676; *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); see also *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability").

Mr. Washington complains in general terms about ADC officials' response to COVID-19 cases at the EARU. To hold Defendants liable, however, he cannot rely on the fact that Defendants were in charge of operating or overseeing the EARU. Rather, he must explain how each Defendant was individually involved in violating his rights. Mr. Washington seeks to hold Defendant Randle liable solely because he was chief of security at the EARU. This fact is insufficient to state a federal claim for relief against Defendant Randle.

E. Sovereign Immunity

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). Accordingly, Mr. Washington's claims for money damages from the Defendants in their official capacities are barred by sovereign immunity.

F. Qualified Immunity/Individual Capacity Claims[5]

Mr. Washington alleges that Defendants Waddle, Lay, Deen, and Payne knew that his refusal to work was based on his fear of contracting COVID-19. He maintains that their failure to excuse him from work and their failure to take corrective action when he was disciplined for refusing to work violated his rights.[6] Defendants argue they are

---

[5] Defendants are entitled to dismissal under Rule 12(b)(6) if they show they are entitled to qualified immunity 'on the face of the complaint.'" *Vandevender v. Sass*, 970 F.3d 972 (8th Cir. 2020) (internal citations and quotations omitted).

[6] While the Court is concerned that Mr. Washington might have been sent to work in the field after he tested positive for COVID-19, that is a claim that could only be raised by Mr. Washington's fellow inmates, not by Mr. Washington.

5

entitled to qualified immunity on these claims.

Public officials are immune from liability unless their conduct violated clearly established federal law and then, only if a reasonable person would have known that the conduct was a violation of the law. *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (*en banc*) (internal quotation marks omitted). Stated another way, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (citing *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007)).

The first question, therefore, is whether Defendants Waddle, Lay, Deen, and Payne violated Mr. Washington's rights by requiring him to work when no cases of COVID-19 had been diagnosed at the EARU. Even if this conduct could be deemed a violation, the Defendants cannot be held liable unless the Court determines that reasonable correction officers would have understood that requiring Mr. Washington to report to work would be so dangerous that it would be a violation of his constitutional rights. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). The law, as it existed at the time of the events giving rise to this lawsuit, "must have placed the statutory or constitutional question beyond debate." *Dillard*, 961 F.3d at 1052 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Mr. Washington attached grievances he wrote April 17 and 28, 2020, complaining about having to report for work in the field, explaining that he was having to share tools and stand less than one foot away from other inmates while working. (Doc. No. 2, pp.30-35) On May 29, 2020, the warden responded to Mr. Washington's April 28, 2020

grievance, explaining that the ADC was taking necessary precautions to keep the community safe, including requiring staff and inmates to wear masks and providing sanitizer to inmates in the sally port both on their way to work and when they return. (Doc. No. 2, p.34) The warden also noted that, as of that date, there had not been a positive COVID-19 case at the EARU. (Doc. No. 2, p.34)

At the time of the Warden's response to Mr. Washington's grievance, there were no cases of COVID-19 at the EARU. (Doc. No. 2, p.34) Reasonable correction officers would not have known that requiring Mr. Washington to report to work outdoors alongside other inmates was a violation of his clearly established rights. The Warden's response indicates various measure the ADC was taking, including providing masks and hand sanitizer. Accordingly, Defendants Deen, Lay, Waddle, and Payne are entitled to qualified immunity.

## IV.    Conclusion

The Court recommends that the Defendants' motion to dismiss (Doc. No. 12) be GRANTED, this 18th day of November, 2020.

_____
UNITED STATES MAGISTRATE JUDGE